IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEREMY FRYDMAN and )
SAM MARIN, on behalf of plaintiffs )
and the class defined below, )
                                                          )
         Plaintiffs, )
                                                          )   No. 11 CV 524
v. )
                                                          )   Jeffrey T. Gilbert
PORTFOLIO RECOVERY )   Magistrate Judge
ASSOCIATES, LLC, )
                                                          )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jeremy Frydman and Sam Marin filed this class action lawsuit against defendant Portfolio Recovery Associates, LLC alleging that defendant engaged in unlawful practices in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Before the Court is defendant's combined motion (1) to dismiss the complaint without prejudice or stay the case relying on the doctrine of primary jurisdiction and (2) to strike the allegations in the complaint that relate to the Fair Debt Collection Practices Act ("FDCPA") because no FDCPA claim is pleaded. [Dkt.#39] For reasons set forth in this Memorandum Opinion and Order, defendant's motion to dismiss the complaint or stay the case on primary jurisdiction grounds is denied, and the motion to strike the allegations that relate to the FDCPA is granted in part and denied in part.

### BACKGROUND

Plaintiffs are individuals who reside in the Northern District of Illinois. (Pls' Consolidated Compl. [Dkt.#35], at ¶¶ 5–6). Plaintiffs allege they each received numerous calls on their cell phones from defendant in an attempt to collect on debts assigned to defendant by

plaintiffs' putative creditors. (*Id.* at ¶¶ 9–10, 21–26). Plaintiffs allege that these calls were placed by automated dialing equipment in violation of the TCPA. (*Id.* at ¶¶ 11, 28). The TCPA provides a private right of action for damages for conduct that violates that statute. (*Id.* at ¶¶ 39–41). Plaintiff Marin alleges that defendant made around 100 such calls to him between October and December 2010. (*Id.* at ¶ 21). Plaintiff Frydman alleges that defendant made at least 20 calls to his cell phone between December 8, 2010 and January 19, 2011. (*Id.* at ¶ 10). According to their complaint, neither Frydman nor Marin consented to these calls nor did they give their cell phone numbers to defendant or the putative creditors who assigned the debts to defendant. (*Id.* at ¶¶ 12–14, 18). Plaintiffs' class action suit does not seek to include any consumers who furnished their cell phone numbers to defendant or the underlying creditors. (Pls' Resp. [Dkt.#55], at 9–10, n. 2).

Defendant neither disputes nor agrees with the factual allegations regarding telephonic contacts between itself and plaintiffs.[1] Defendant contends, however, that this Court must stay the case or dismiss it without prejudice because the Federal Communications Commission ("FCC") has issued a Notice of Proposed Rulemaking ("NPRM") regarding the interpretation of the TCPA that could have some bearing on the issues to be decided in this case. (Def's Mot. [Dkt.#39], at 1). Defendant argues that the NPRM process "will address: (1) whether the TCPA applies to calls made by debt collectors; and (2) whether dialing systems that employ predictive dialing technology, such as those used by debt collectors, constitute 'automatic telephone dialing systems' ("ATDS") under the TCPA." (Def's Mem. of Law [Dkt.#41], at 1). Defendant contends that this Court should not adjudicate plaintiffs' claims in this case until the NPRM process has run its course.

---

[1] The factual allegations recited here are taken from plaintiffs' complaint because defendant has filed a motion to dismiss or stay the case in lieu of answering the allegations. The allegations are taken as true for purposes of this motion.

## I.     Motion to Dismiss or Stay on Primary Jurisdiction Grounds

### A. Legal Standard

A motion to dismiss or to grant a stay invoking the doctrine of primary jurisdiction is not technically a motion asking for dismissal or a stay based on lack of *jurisdiction*. Rather, such a motion actually seeks judicial abstention based on the need for "judicial self restraint" and a "healthy respect" for the authority of the administrative agency in question. *Weidberg v. Am. Airlines, Inc.*, 336 F. Supp. 407, 409 (N.D. Ill. 1972). There is no fixed formula for determining whether a court should stay its hand in deference to an administrative agency. *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956), superseded by regulation on other grounds in *Jones Truck Lines, Inc. v. Aladdin Synergetics, Inc.*, 174 B.R. 76 (M.D. Tenn. 1994). The decision involves a case-by-case determination whether the purposes served by the primary jurisdiction doctrine will be aided by its application in the case at bar. *Id.*

There are two fundamental rationales for the doctrine of primary jurisdiction: (1) to avoid inconsistent rulings and achieve a "desirable uniformity" in decision making, and (2) to defer to "expert and specialized knowledge" of regulatory agencies when such a need is present. *Id.* Both rationales further the goal of accomplishing "uniformity and consistency in the regulation of business" by the most efficient means of dispute resolution available. *Id.* at 64–65. As a prudential doctrine, primary jurisdiction "should be invoked sparingly since it often results in added expense and delay." *United States v. DISH Network, L.L.C.*, No. 09-3073, 2011 U.S. Dist. LEXIS 10943, at *5 (C.D. Ill. Feb. 4, 2011).

While the Seventh Circuit has not spoken definitively about the approach a court should take in applying the primary jurisdiction doctrine, the Court of Appeals has cited with approval

the Second Circuit's decision in *National Communications Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220 (2d Cir. 1995), in which the court focused on whether a case raises issues "extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience." *Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001) (internal quotation marks omitted) (quoting *National Communications,* 46 F.3d at 222–23); *see also In re StarNet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004). The factors and policy issues that courts have taken into account in analyzing a primary jurisdiction argument have been summarized this way: "(a) whether the question at issue is within the conventional experience of judges; (b) whether the question at issue involves technical or policy issues within the agency's particular field of expertise; (c) whether a determination would involve the exercise of agency discretion; (d) the need for a consistent and uniform rule; (e) the likelihood of inconsistent rulings if not referred to the agency; (f) whether the issue has already been before the agency; (g) whether judicial economy is served by having the agency resolve the issue; and (h) whether the referral [to an administrative agency] will result in substantial delay and added expense." *Gilmore v. Sw. Bell Mobile Sys., L.L.C.*, 210 F.R.D. 212, 221 (N.D. Ill. 2001); *see also DISH Network*, 2011 U.S. Dist. LEXIS 10943, at *7 (using a four-factor test to analyze a primary jurisdiction argument which considers: (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made).

The factors identified in *Gilmore* and *DISH Network* focus the Court's attention on whether it is more efficient for the Court or an administrative agency to deal with the question at

4

issue in a particular case. *See also Roberts v. Chemlawn*, 716 F. Supp. 364, 365 (N.D. Ill. 1989) (analyzing a primary jurisdiction argument by weighing the benefits of employing an administrative agency's expertise against the costs created by delaying the litigation). Accordingly, this Court will employ a synthesis of all of these factors to help illuminate the over-arching question of whether a court or an administrative agency should decide the issues in this case in the first instance.

### B. Discussion

Defendant argues that the FCC may shed additional light on whether debt collectors are exempt from the TCPA or, alternatively, whether predictive dialers are automated dialing systems within the meaning of that term as used in the statute, during or as a result of the FCC's current NPRM process relating to the interpretation of the TCPA. (Def's Mem. of Law [Dkt.#41], at 1). Defendant acknowledges that the FCC has spoken on these matters in the past. It argues, however, that the Court should "take a broad view as to whether the NPRM and comments will impact issues relevant to this case" and dismiss or stay the case because the FCC may revisit or modify its previously stated positions in the context of this NPRM process. (Def's Mem. of Law [Dkt.#41], at 5). This Court will look to five factors synthesized from existing case law in this area, and particularly *Gilmore* and *DISH Network*, to determine whether to dismiss or stay the case in deference to the FCC's NPRM process.

#### 1. Are the Issues Raised by Defendant Within the Conventional Experience of Judges or Do They Involve Technical or Policy Considerations Within the FCC's Particular Field of Expertise?

The issues raised by defendant are questions of statutory interpretation which can be and frequently are resolved by courts. While primary jurisdiction has been successfully invoked in cases involving questions of statutory interpretation, such situations typically deal with issues of first impression or "particularly complicated issues" best resolved by the administrative agency

5

in question. *Robinson v. Midland Funding, LLC*, No. 10 C 2261 MMA(AJB), 2011 U.S. Dist. LEXIS 40107, at *3 (S.D. Cal. Apr. 13, 2011).

For example, in *Mical Communications v. Sprint Telemedia*, 1 F.3d 1031 (10th Cir. 1993), the Tenth Circuit invoked the primary jurisdiction doctrine, although neither party asked it to do so, because there was a proceeding pending before the FCC involving the same issue before the court, which was one of first impression. 1 F.3d at 1038–40 (addressing whether defendant's termination of billing and collection services for plaintiff's "romance talk" number was a violation of the Communications Act). Additionally, in *W. Pacific R.R. Co.*, the Supreme Court held that primary jurisdiction should have been invoked by the lower court in a case involving a complicated technical issue of statutory interpretation. 352 U.S. at 65 (holding that the Interstate Commerce Commission should resolve the question of whether certain weapon-making materials qualified as "incendiary bombs" under the Tucker Act and, if the classification was applicable, whether the resulting tariff would be unreasonable).

In contrast to *Mical Communications* and *W. Pacific R.R. Co.*, the issues of statutory interpretation raised by defendant here are not issues of first impression nor are they particularly complicated technical questions that need to be resolved by the FCC before this Court addresses them. Whether the predictive dialers used by defendant are "automatic telephone dialing systems" or "autodialers" as these terms are used in the TCPA is a straightforward interpretive question addressed by prior FCC rulings and some case law. The same can be said with respect to the question of whether debt collection agencies are exempt from the restrictions of the TCPA. In other words, in deciding these issues in this case, this Court would not be writing on a completely clean slate.

6

In 2003, regarding the status of predictive dialers, the FCC stated that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14093 (2003) ("2003 Ruling"). In 2004, the FCC issued a ruling which reiterated that the term "automatic telephone dialing system" as used in the TCPA includes predictive dialers that dial numbers and assist solicitors in "predicting when a sales agent will be available to take the next call." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Rcd 19215, 19215, n.1 (2004) ("2004 Ruling"). In 2005, in response to petitions raising concerns about the "rules addressing the use of predictive dialers," the FCC issued a ruling declining to reconsider the status of predictive dialers. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd 3788, 2005 FCC LEXIS 1158, at ¶¶ 5, 33, 34 (2005) ("2005 Ruling").

Finally, in response to additional requests for reconsideration, the FCC reaffirmed in 2007 that "a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (2007) ("2007 Ruling"). The FCC's present NPRM uses the term "predictive dialer" interchangeably with the term "automated dialing system." (Def's Mem. of Law [Dkt.#41], Ex. 1, at 18, n. 113) ("A predictive dialer is an automated dialing system that automatically dials consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone . . . ."); *see also Vance v. Bureau of Collection Recovery LLC*, No. 10 C 6324, 2011 U.S. Dist. LEXIS 24908, at *2–3 (E.D. Ill. Mar. 11, 2011) ("[T]he Court notes that the FCC has indicated,

and other courts have held, that predictive dialing systems do meet the definition of devices prohibited by the TCPA.").

With respect to whether debt collection agencies are exempt from the TCPA, the FCC clarified its 2005 Ruling and stated that debt collectors are not required to provide the name of their collection agency during prerecorded messages but that "any debt collector . . . [must] . . . state clearly" its telephone number during such messages. 2005 Ruling, at ¶ 37. This language implies that debt collectors are not wholly exempt from the TCPA and defendant seems to acknowledge that is the FCC's current position. In 2007, the FCC reiterated that debt collectors are not completely exempt from the statute and may not use predictive dialers to call consumers' cell phones unless "the wireless phone number was provided by the subscriber in connection with the existing debt." 2007 Ruling, at 567. In all other cases, "debt collectors . . . [must] . . . comply with the TCPA's prohibition on telephone calls using an autodialer . . . to [dial] wireless numbers." *Id.*; *see also Robinson*, 2011 U.S. Dist. LEXIS 40107, at *4 ("The FCC . . . refus[ed] to carve out an exception for debt collectors.").

Accordingly, this case does not raise an issue of first impression as far as the FCC is concerned. The FCC already has spoken, multiple times, on matters potentially relevant to this case. Defendant has submitted to the FCC its comments as part of the NPRM process asking the FCC to modify or clarify certain language in the agency's proposed rule that is applicable or potentially applicable to defendant's business. (Def's Mem. of Law [Dkt.#41], Ex. 2). The possibility that the FCC will choose to accept defendant's comments, or comments submitted by others interested in the pending NPRM process, and change or modify its previously stated positions, is not enough reason for this Court to stay its hand while that process plays out before the FCC. Rather, the Court and the parties in this case face a familiar playing field in the context

of civil litigation. As such, this case presents issues that are well-within the conventional experience of judges.

### 2. Are the Issues Raised by Defendant Particularly Within the FCC's Discretion?

There is some ambiguity as to whether a decision by the FCC to interpret the TCPA in the manner advocated for by defendant is within the agency's discretion in the context of the pending NPRM. Citing *Biggerstaff v. FCC*, 511 F.3d 178 (D.C. Cir. 2007), plaintiffs assert that "only if the FCC states that it intends to reopen" consideration of the questions addressed by the 2007 Ruling can it revisit those issues. (Pls' Resp. [Dkt.# 55], at 8). The wording of the present NPRM does not suggest that the FCC intends to revisit the issues addressed by the 2007 Ruling that are once again being raised by defendant and others in comments filed in response to the proposed new rules. To the contrary, the NPRM comprises a proposal to tighten restrictions on the use of robocalls in multiple ways. Specifically, the NPRM asks for comments on the FCC's tentative conclusions that the TCPA's "established business relationship" exemption should be discontinued and that solicitors should only be exempt from the statute if a consumer's express written consent is obtained prior to the contact. (Def's Mem. of Law [Dkt.#41], Ex. 1, at 10, 13–14). Further, as noted above, the NPRM contains language affirming that predictive dialers are subject to the statutory restrictions on the use of automated dialing systems. Because the FCC does not appear to have announced an intention to revisit the issues raised by defendant, it may not be within the agency's discretion to do so in the context of the present NPRM.[2]

---

[2] The NPRM also seeks comment on proposals that appear to be unrelated to the case at bar, which include: (1) adopting a more restrictive method of calculating the percentage of abandoned calls allowed to solicitors; (2) requiring that prerecorded messages provide a mechanism for consumers to opt out of future solicitations; and (3) exempting certain health-care related calls from the statute. (Def's Mem. of Law [Dkt.#41], Ex. 1, at 2, 14–20).

Conversely, defendant asserts that "problematic overlap is likely" because "the FCC is likely to address issues relevant" to this case, pointing to comments on the NPRM filed by creditors, trade organizations, the Department of Treasury, the Department of Education and others which arguably support its position. (Def's Reply [Dkt.#56], at 1, 3; Def's Mem. of Law [Dkt.#41], Exs. 3–8). Defendant later qualifies the likelihood of such a ruling, stating merely that there is a "real possibility" of the FCC addressing these issues in its final decision on the proposed new rules. (Def's Reply [Dkt.#56], at 5). Although comments filed by various parties suggest that resolving the issues in a way favorable to defendant may be within the agency's discretion, the Court need not decide this issue because the other factors strongly indicate that the rationale for primary jurisdiction is not present here. In particular, as discussed below, any decision by the FCC to revisit its position regarding predictive dialers and the debt collection industry in the context of the NPRM likely is to be applied prospectively while plaintiffs in this case seek damages for past conduct.

### 3. Is There a Danger of Inconsistent Rulings?

There does not appear to be a consequential danger of inconsistent rulings on the issues raised by defendant. The NPRM asks for comments on the FCC's tentative conclusions that interpretation of the TCPA should be "harmoniz[ed]" with the Federal Trade Commission's "more restrictive standards" on robocalls. (Def's Mem. of Law [Dkt.#41], Ex. 1, at 2). However, any change in the FCC rules regarding interpretation of the TCPA only would apply prospectively, eliminating the danger of inconsistent rulings. *Am. Tel. & Tel. Co. v. F.C.C.*, 978 F.2d 727, 732 (D.C. Cir. 1992), *cert. denied*, 509 U.S. 913 (1993).

Further minimizing the danger of inconsistency, any new rulings issued by the FCC on the TCPA must be issued subject to prior notification if they are not seen as a logical outgrowth

of the existing rules. *Robinson*, 2011 U.S. Dist. LEXIS 40107, at *4 (holding that an agency adopting new rules which differ from proposed rules is "required to renotice" if the new rules are not a "logical outgrowth" of the proposed rules) (quoting *Connecticut Light and Power Co. v. NRC*, 673 F.2d 525, 533, 218 U.S. App. D.C. 134 (D.C. Cir. 1982)). Although defendant and others have filed comments asking the FCC to loosen the restrictions on debt collectors, such a ruling likely would not be seen as a logical outgrowth of the proposed rules. Therefore, the danger of inconsistent rulings appears minimal at best and possibly non-existent here.

### 4. Has a Prior Application to the FCC Been Made on the Issues Raised by Defendant?

"[I]f prior application to the agency is present, this factor provides support for the conclusion that . . . primary jurisdiction is appropriate." *DISH Network*, 2011 U.S. Dist. LEXIS 10943, at *7. There have been several prior applications to the FCC concerning the reach of the TCPA. *See, e.g.*, 2003 Ruling; 2004 Ruling; 2005 Ruling; 2007 Ruling referenced above. The FCC consistently has stated that "predictive dialers" are encompassed within the TCPA's usage of phrases such as "automatic telephone dialing system." *See, e.g.*, 2007 Ruling, at 566. The FCC also has consistently stated that collection agencies are exempt from the TCPA only in the limited circumstances in which a consumer has provided his or her phone number to a collection agency or an underlying creditor in connection with the debt in question. *Id.* at 566–567.

Plaintiffs' proposed class, however, does not include consumers who furnished cell phone numbers to defendant or an underlying creditor. Rather, the class definition is limited to individuals who received automated calls from defendant at cell phone numbers not provided to the original creditor or defendant. (Pls' Consolidated Compl. [Dkt.#35], at ¶43; Pls' Resp. [Dkt.#55], at 9–10, n. 2). Therefore, the mere existence of a prior application to the FCC involving issues that may be relevant to this case does not suggest that deferral on the basis of

11

primary jurisdiction is warranted here. There is no suggestion that a resolution of the claims raised in plaintiffs' complaint would benefit from or require additional guidance from the FCC for a class period that pre-dates the filing of the lawsuit. While it may be interesting to hear whatever the FCC may say in the future on these issues, it does not appear that information is critical or even necessary for the Court to decide the issues presented in this case.

5. **Would Judicial Economy Be Served by Having the FCC Resolve this Issue or Would a Referral Result in Substantial Delay and Added Expense?**

While the Seventh Circuit has not identified judicial economy as a required factor in analyzing a primary jurisdiction argument, courts often weigh the benefits of applying the doctrine against the potential litigation costs resulting from complications and delay. *See, e.g., Roberts*, 716 F. Supp. at 365. In the case at bar, judicial economy will not be served by deferring to the FCC. Whatever the FCC decides at the culmination of the NPRM process will not affect plaintiffs' claims because any ruling likely will be prospective only. Awaiting such a ruling by the FCC would involve substantial delay. The repetitious nature of the requests to the FCC to reconsider its rules on the scope of the TCPA suggests that deferring to the agency on this issue only would add fuel to a never-ending cycle at the cost of delaying resolution of the underlying dispute. The impact of such delay on the expeditious resolution of disputes and the interest of providing certainty to the parties here and others similarly situated outweigh any potential benefits of deferring to the FCC on this issue, which are minimal at best.

The Court notes, only for a touch of the kind of humor for which he was well-known, the late Judge James B. Moran's apparently tongue-in-cheek comment in *Roberts v. Chemlawn Corp.*, 716 F.Supp. 364, 365 (N.D. Ill. 1989), when he denied a motion to dismiss on primary jurisdiction grounds and stated that "[a]s far as this court can tell, the EPA will not complete its

assessment of non-agricultural pesticides until the beginning of the next century." Whether the FCC's NPRM process is completed this year, next year, or in the next century, the results of that process are likely of only limited utility for the Court to decide the issues in this case. Therefore, judicial economy will be served by proceeding with this case and letting the FCC's process run its own course.

Accordingly, for all of these reasons, defendant's motion to dismiss or stay on primary jurisdiction grounds is denied.

## II.     Motion to Strike Allegations Relating to the FDCPA

### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(f), on a motion made prior to a responsive pleading, the Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike allegedly immaterial matter generally are disfavored. *U. S. Dental Inst. v. Am. Ass'n of Orthodontists*, 396 F. Supp. 565, 583 (N.D. Ill. 1975). A court should only strike portions of a pleading if it is clear that the material can have no possible bearing on the subject matter of the litigation. *Capitol Indemnity Corporation v. Tranel Developments Inc.*, 144 F.R.D. 346, 347 (N.D. Ill. 1992). In addition, material should not be stricken unless the moving party is prejudiced by its inclusion. *Id.* Prejudice results when the challenged matter "has the effect of confusing the issues" or where its length and complexity places an undue burden on the responding party. *Anderson v. Bd. of Educ. of City of Chicago*, 169 F. Supp. 2d 864, 867–68 (N.D. Ill. 2001) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1382).

### B. Discussion

As defendant notes, plaintiffs' complaint does not allege an FDCPA claim and plaintiffs will not have to prove up such a claim to prevail in this case. (Def's Mot. [Dkt.#39], at 13). Nonetheless, this Court will not strike material that may be relevant to plaintiffs' TCPA claim. Defendant singles out paragraphs 20, 23, 27, 31, 33, 34, and 35 of plaintiffs' complaint as prejudicial and irrelevant. (*Id.* at 12). The allegations in those paragraphs of the complaint, however, provide the context in which plaintiffs contend defendant did the things alleged in the complaint, and are potentially relevant to whether defendant knowingly violated provisions of the TCPA. Consequently, these allegations are potentially relevant to the amount of damages available to plaintiffs under the statute. *See* 47 U.S.C. § 227(b)(3) ("If the Court finds that the defendant willfully or knowingly violated this subsection . . . the court may . . . increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph."). Accordingly, paragraphs 23, 27, 31 and 34 will not be stricken by the Court.

The Court will strike the second sentence of paragraph 35 because it is irrelevant and is a legal conclusion. ("Defendant has therefore violated FDCPA, 15 U.S.C. § 1692e(11)."). But, for the reasons set forth in the preceding paragraph, the first sentence of paragraph 35 will not be stricken. ("Defendant failed to advise Marin that they were a debt collector and that information obtained would be used in the process of collecting a debt."). Because paragraphs 20 and 33 of plaintiffs' complaint also contain legal conclusions and relate to the legal elements of an FDCPA claim, they will be stricken in their entirety. Accordingly, defendant's motion to strike is granted in part and denied in part.

## CONCLUSION

For all of the reasons discussed in this Memorandum Opinion and Order, defendant's combined motion to dismiss the complaint without prejudice or stay the case relying on the doctrine of primary jurisdiction and to strike the allegations in the complaint that relate to the Fair Debt Collection Practices Act is granted in part and denied in part. [Dkt.#39] The motion to dismiss the complaint without prejudice or stay the case on primary jurisdiction grounds is denied. The motion to strike allegations relating to the FCPA is granted with respect to paragraphs 20 and 33 of the complaint and with respect to the final sentence of paragraph 35 of the complaint and is denied with respect to paragraphs 23, 27, 31, and 34 of the complaint and with respect to the first sentence of paragraph 35 of the complaint.

It is so ordered.

_Jeffrey T. Gilbert_
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:  June 28, 2011